# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| WALTER D.B.,[1]<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner, Soc. Sec. Admin., in official capacity,<br><br>　　　　　　　　　　Defendant. | Case No. 3:20-cv-00293-SLG |

## DECISION AND ORDER

On or about January 10, 2019, Walter D.B. ("Plaintiff") protectively filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"),[2] alleging disability beginning November 15, 2017.[3] The ALJ amended Plaintiff's alleged onset date to September 18, 2015.[4] Plaintiff has exhausted his

---

[1] Plaintiff's name is partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Title II. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[3] Administrative Record ("A.R.") 9. The application summary, not the application itself, appears in the Court's record. The application summary lists January 11, 2019, as the application date. A.R. 152.

[4] Plaintiff previously filed a Title II application on September 8, 2015. His claim was denied at the initial level on September 17, 2015 and Plaintiff did not appeal this decision. The ALJ did not find

administrative remedies and filed a Complaint seeking relief from this Court.[5] Plaintiff's opening brief asks the Court to reverse and remand the agency's decision for an award of benefits or, in the alternative, for further administrative proceedings.[6] The Commissioner filed an Answer and a response brief.[7] Plaintiff filed a reply brief on July 14, 2021.[8] Oral argument was not requested and was not necessary to the Court's decision. On July 20, 2021, Defendant Commissioner Saul was substituted by Acting Commissioner Kilolo Kijakazi pursuant to Federal Rule of Civil Procedure 25(d).[9] This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[10] For the reasons set forth below, Plaintiff's request for relief is granted.

## I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[11] "Substantial evidence" has been defined by the United States Supreme Court as "such

---

good cause to reopen the prior application and determined that the period at issue began on September 18, 2015, the date after the prior determination became administratively final, through December 31, 2015, the date last insured. A.R. 9, 35. *See also* n. 40.

[5] Docket 1 (Plaintiff's Compl.).

[6] Docket 19 (Plaintiff's Br.).

[7] Docket 13 (Answer); Docket 23 (Defendant's Br.).

[8] Docket 24 (Reply).

[9] Docket Annotation (July 20, 2021).

[10] 42 U.S.C. § 405(g).

[11] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

Case No. 3:20-cv-00293-SLG
Decision and Order
Page 2 of 17

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[13] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[14] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[15] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[16] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[17] Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[18] In particular, the

---

[12] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[13] *Richardson*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[14] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[15] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[16] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[17] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[18] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect his own interests.[19]

## II. DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[20] In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[21] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[22]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[23]

---

[19] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[20] 42 U.S.C. § 423(a).

[21] 42 U.S.C. § 1381a.

[22] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[23] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[24] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[25] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[26] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[27] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[28] *The ALJ determined that Plaintiff had not engaged in substantial activity from September 18, 2015 through December 31, 2015, the period at issue.*[29]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the

---

[24] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[25] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[26] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[27] *Tackett*, 180 F.3d at 1101.

[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[29] A.R. 9, 11.

twelve-month duration requirement.[30]  *The ALJ determined that Plaintiff had the following medically determinable severe impairment: degenerative disc disease.  The ALJ determined that Plaintiff's anxiety and depression. learning disabilities, and anger issues were not medically determinable mental impairments.*[31]

**Step 3.**  Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity.  If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled.  If not, the evaluation goes on to the fourth step.[32]  *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[33]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.  Once determined, the RFC is used at both step four and step five.  An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from his impairments, including impairments that are not severe.[34]  *The ALJ determined that Plaintiff had the residual functional capacity to perform light work*

---

[30] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[31] A.R. 12, 15.

[32] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[33] A.R. 11–12.

[34] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Case No. 3:20-cv-00293-SLG
Decision and Order
Page 6 of 17

*with the following limitations: he could frequently stoop; occasionally climb ladders, ropes, and scaffolds; and he must avoid concentrated exposure to excessive vibration and unprotected heights.*[35]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do his past relevant work, the claimant is deemed not to be disabled.[36] Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff was capable of performing his past relevant work as a driver and delivery driver as actually and generally performed.*[37]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[38] *The ALJ did not reach step five in his analysis.*[39]

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from September 18, 2015, the date after Plaintiff's previous

---

[35] A.R. 12.

[36] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[37] A.R. 15.

[38] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[39] A.R. 15.

application was denied and not appealed, through December 31, 2015, his date last insured.[40]

### III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1966 and was 49 years old on his date last insured of December 31, 2015.[41] Before December 31, 2015, Plaintiff reported working as a general laborer, as a construction laborer, and as a delivery and advertising driver.[42] He testified to having back surgery on January 19, 2019.[43] On April 12, 2019, the Social Security Administration ("SSA") determined that Plaintiff was not disabled under the applicable rules.[44] Plaintiff appeared and testified without representation at a hearing held on January 31, 2020 in Anchorage, Alaska before ALJ Paul Hebda.[45] On March 17, 2020, the ALJ issued an unfavorable ruling.[46] On September 28, 2020, the Appeals Council

---

[40] The ALJ appears to have misstated the relevant disability period as November 15, 2017 through December 31, 2015 in his conclusion. A.R. 15. In the opening summary of his decision, the ALJ stated that his decision covered the period from September 18, 2015 through December 31, 2015. A.R. 9. The Commissioner agrees to this period in briefing. Docket 23 at 2. In reply, Plaintiff makes no argument to the contrary. Docket 24. Therefore, the Court assumes that the relevant disability period is September 18, 2015 through December 31, 2015.

[41] A.R. 9, 152.

[42] A.R. 44–49, 186.

[43] A.R. 40.

[44] A.R. 80.

[45] A.R. 42–52.

[46] A.R. 6–16.

denied Plaintiff's request for review.[48] On November 23, 2020, Plaintiff appealed the Commissioner's final decision to this Court.[49]

## IV. DISCUSSION

Plaintiff is represented by counsel in this appeal. Plaintiff contends that the ALJ erred by failing to provide adequate reasons for rejecting testifying medical expert, Olivia Bajor, D.O.'s, opinion that Plaintiff met Listing 1.04.[50] Defendant concedes that the ALJ committed reversable error in evaluating Dr. Bajor's opinion.[51] Therefore, the parties' disagreement in this case focuses on the scope of the remand.

### A. Legal Standard for Remand

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."[52] When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[53] A court follows a three-step analysis to determine whether a case raises the "rare circumstances" that allow a court to exercise its discretion to

---

[48] A.R. 1–5.

[49] Docket 1.

[50] Docket 19 at 6–14.

[51] Docket 23 at 3.

[52] *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987) (remanding for determination of benefits where the panel was "convinced that substantial evidence does not support the Secretary's decision, and because no legitimate reasons were advanced to justify disregard of the treating physician's opinion.")

[53] *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc., Sec. Admin.,* 775 F.3d 1090, 1099 (9th Cir. 2014)).

Case No. 3:20-cv-00293-SLG
Decision and Order
Page 9 of 17

remand for an award of benefits.[54] Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court may remand for an award of benefits.[55] But, "even if all three requirements are met, [a court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'"[56]

In this case, Plaintiff maintains that remanding for an award of benefits is appropriate. He argues Dr. Bajor's opinion that Plaintiff met Listing 1.04 was supported by the only record during the relevant period, an MRI from August 2015, and supported by Plaintiff's subsequent back surgery due to the impingement shown on that MRI. He also asserts that further delay caused by obtaining evidence from another medical expert would be unfair.[57] The Commissioner asserts that despite the ALJ's failure to provide adequate reasons for rejecting Dr. Bajor's opinion, "the record does not establish all of the listing criteria was met during the period at issue, so remand for further administrative

---

[54] *Garrison,* 759 F.3d at 1020.

[55] *Revels v. Berryhill,* 874 F.3d 648, 668 (9th Cir. 2017) (quotations and citations omitted).

[56] *Brown-Hunter,* 806 F.3d at 495 (quoting *Garrison,* 759 F.3d at 1021).

[57] Docket 24 at 1–4.

Case No. 3:20-cv-00293-SLG
Decision and Order
Page 10 of 17

Case 3:20-cv-00293-SLG   Document 25   Filed 02/11/22   Page 10 of 17

proceedings, as opposed to remand for payment of benefits, is the appropriate remedy." The Commissioner proposes that the ALJ obtain evidence from a new medical expert and further evaluate the opinion evidence.[58]

   B. <u>Dr. Bajor's Medical Expert Testimony</u>

As set forth above, Plaintiff attended and testified without representation at a hearing before ALJ Paul Hebda on January 31, 2020.[59] The ALJ called Olivia Bajor, D.O., to testify as the medical expert.[60] At the hearing, the ALJ limited Plaintiff's disability period to September 18, 2015 through December 31, 2015. He notified Dr. Bajor of the limited period and then asked her to comment on the only record from the relevant period, Plaintiff's MRI from August 29, 2015.[61] Dr. Bajor answered, "[b]ased on this MRI finding, with the large disc bulge, it does show that it's impinging upon the left L5 nerve root." She then stated, "[t]hat would meet [Listing] 1.04."[62] Next, the ALJ pointed Dr. Bajor to the medical opinion of reviewing SSA physician, Jay Caldwell, M.D., from April 2019, opining

---

[58] Docket 23 at 3, 8.

[59] A.R. 42–52.

[60] A.R. 38.

[61] A.R. 38, 260–62.

[62] To meet Listing 1.04A, Plaintiff must establish (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; as well as the following severity requirements: (2) limitations of motion of the spine; and (3) motor loss ("atrophy with associated muscle weakness or muscle weakness") accompanied by sensory or reflex loss, and if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

that Plaintiff would have a light RFC based on the August 2015 MRI findings.[63]  Dr. Bajor stated, "I would disagree [with Dr. Caldwell's opinion], based on the severity of the MRI findings."  She testified,

> You know, sometimes, with that severity of finding, I mean, they'll try conservative therapy at first, which does appear is what they did, here.  But, typically, if you see that it's impinging upon the nerve root, that pretty much means that you're going to be moving towards surgery.[64]

Plaintiff then testified that he had undergone back surgery in January 2019.[65]

### C. The ALJ's Decision

In his decision, the ALJ found Dr. Bajor's testimony not persuasive.  He acknowledged that Dr. Bajor reviewed the medical record, but he determined Dr. Bajor's opinion that Plaintiff met Listing 1.04 was "not supported by the medical record for the period under consideration."  The ALJ reasoned that the record did not support a finding of arachnoiditis or that Plaintiff was unable to ambulate effectively and that Dr. Bajor's opinion was "based on a speculative assessment that [Plaintiff] would have developed certain chronic symptoms as time progressed."[66]

---

[63] A.R. 40, 73–75.

[64] A.R. 38–40.

[65] A.R. 40.

[66] A.R. 14.  Earlier in his decision, the ALJ also provided the following reasons for determining that Plaintiff did not meet Listing 1.04.  He stated,

> While [the] August 2015 workup showed evidence of nerve root compromise in his lumbar spine, he did not have the necessary neurological examination findings.  He also did not have spinal arachnoiditis or spinal stenosis, resulting in pseudoclaudication.  Moreover, the claimant was able to ambulate effectively as defined in Listing 1.00B2b.  He was not prescribed and he did not require an assistive device; treatment notes around the period at issue did not indicate any significant difficulties with mobility; and, when examined prior to and subsequent

The ALJ acknowledged that Plaintiff's August 2015 MRI and treatment notes before and after the relevant disability period were consistent with Plaintiff's allegations, showing "degenerative changes in his lumbar spine with nerve root impingement and, when examined, he sometimes had paraspinal tenderness with slightly reduced reflexes, strength, and sensation in his lower extremities." He acknowledged that Plaintiff's back impairment ultimately resulted in L4-5 posterior lumbar interbody fusion and decompression. The ALJ then found that "physical examinations closer to the period at issue demonstrate that [Plaintiff] retained the capacity to work consistent with residual functional capacity between September 18, 2015 and December 31, 2015." The ALJ reasoned that the severity of Plaintiff's back impairment was out of proportion to the observations and findings by providers "prior and subsequent to the period at issue."[67]

D. Completeness of the Record

In this case, there is a single record from the relevant period. The MRI from August 29, 2015 shows an "L4-5 large posterior disc bulge with superimposed moderate to large right-sided disc extrusion extending inferiorly into the right lateral recess and impinging on the L5 nerve root" and an "L5-S1 small right paracentral disc protrusion and annular tear with slight right S1 nerve root impingement."[68] Although the ALJ singled out three treatment records, one from November 2012, one from March 2017, and a third from May

---

to the period at issue, physical examinations were largely unremarkable to include, for example, a normal gait with intact cranial nerves. A.R. 12.

[67] A.R. 13.

[68] A.R. 260.

2017, evidencing "a largely normal gait and full range of motion,"[69] the medical record as a whole does not provide substantial evidence to support the ALJ's findings.[70]

For example, in the November 2012 record cited to by the ALJ, Plaintiff also reported that his back pain was not constant. He reported that he would be "okay for a couple of months" and then experience back and leg flare-ups for up to a week at a time.[71] The record from March 2017 was an ear, nose, and throat evaluation.[72] In the record from May 2017, the treating physician reviewed x-rays obtained at the appointment and reviewed the August 2015 MRI. She noted that Plaintiff's acute disc herniation was contributing to his severe pain complaints with some relief with physical therapy and that Plaintiff had muscle atrophy and ongoing pain complaints.[73]

Plaintiff's treating physicians also observed muscular atrophy in the right lower leg and diminished deep tendon reflexes at patient visits in 2017 and 2018.[74] The medical record is replete with Plaintiff's attempts to obtain pain relief by non-surgical methods as

---

[69] A.R. 13.

[70] *See Garrison,* 759 F.3d at 1017 n.23 (9th Cir. 2014) (citing *Scott v. Astrue,* 647 F.3d 734, 739–40 (7th Cir. 2011) (holding ALJ not permitted to "cherry-pick" from mixed results in treatment notes to support denial of benefit.).

[71] A.R. 269.

[72] A.R. 233.

[73] A.R. 590–91.

[74] A.R. 579–80 (diminished deep tendon reflexes and right calf atrophy), 572 (altered sensation on left, mild weakness on left, asymmetric reflexes at the Achilles and knees, positive straight leg test on the left), 574–75 (atrophy of right calf and radiating pain in both legs).

well as recommendations by treating physicians for Plaintiff to undergo back surgery.[75] And, as stated above, Plaintiff underwent major back surgery in January 2019 after more conservative measures failed.[76]

Moreover, when Dr. Bajor testified, she had reviewed Plaintiff's treatment records and concluded that Plaintiff met Listing 1.04 for his degenerative disc disease.[77] Although the Commissioner argues the case should be remanded for another hearing with a different medical expert to explain whether the listing criteria was met, precedent in the Ninth Circuit "and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of [the] credit-as-true analysis."[78]

In sum, the first credit-as-true factor is satisfied. The record for the relevant time period of late 2015 is sufficiently developed.

### E. ALJ Error

As to the second credit-as-true factor, the Commissioner concedes that the ALJ failed to provide adequate reasons for rejecting testifying medical expert Dr. Bajor's medical opinion and that "substantial evidence does not support the ALJ's findings

---

[75] *E.g.,* A.R. 316, 319, 573–75, 579, 583–87, 623, 640, 643.

[76] A.R. 626–28.

[77] A.R. 38.

[78] *Garrison,* 759 F.3d at 1021 (citing *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")).

regarding the listings."[79] The Court agrees with the parties that the ALJ failed to provide legally sufficient reasons for rejecting this evidence.

    F. <u>Crediting as True Demonstrates Disability and No Serious Doubt Remains</u>

As to the third credit-as-true factor, if Dr. Bajor's testimony is credited as true, the ALJ would be required to find Plaintiff disabled on remand.[80] A claimant who meets a listing at step three in the sequential disability evaluation is disabled.[81] And, there is no serious doubt that based on the record as a whole, Plaintiff was disabled in late 2015.[82] As set forth above, Plaintiff's MRI result in August 2015 and his subsequent back treatments, culminating in major back surgery, support Dr. Bajor's opinion testimony and Plaintiff's statements. Moreover, Plaintiff has waited nearly seven years for disability benefits arising from late September, 2015.[83]

## V.    ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence in the record. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 19

---

[79] Docket 23 at 3.

[80] *Garrison,* 759 F.3d at 1021.

[81] *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990) ("[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.").

[82] *Garrison,* 759 F.3d at 1021.

[83] A.R. 9. *See Trevizo v. Berryhill,* 871 F.3d 664, 683 (9th Cir. 2017) (The Court exercised discretion to order payment of benefits where claimant was 65 years old and first sought benefits more than seven years prior).

is GRANTED; the Commissioner's motion at Docket 23 is DENIED; and this matter is REVERSED and REMANDED to the Commissioner for the immediate calculation and award of benefits.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 11th day of February, 2022 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE